**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| ROTATABLE TECHNOLOGIES LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 2:12-CV-265-JRG |
| NOKIA, ET AL., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |
| | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

# TABLE OF CONTENTS

I.  BACKGROUND…………………………………...…………………………………3

II.  LEGAL PRINCIPLES……...………………………………………………...............3

III.  U.S. PATENT NO. 6,326,978…………………………………………………..….10

     A.     The Disclosure of the '978 Patent………………………………………10

     B.     The Asserted Claims of the '978 Patent…………………………………12

IV.  CONSTRUCTION OF DISPUTED TERMS………………….………………13

     A.     Whether the Preamble Terms in Claims 9 and 14 Are Limitations……...13

          1.     "Computer Display Window"……………………………15

          2.     "Selectively Rotating"……………………………………16

     B.     "Selectively Rotating a Computer Display Window"…………………...20

     C.     "Computer Display Window/Window"……………………………...21

     D.     "Display Portion"……………………………………………………23

     E.     "A Frame Surrounding the Display Portion"……………………………24

     F.     "Determining a Rotation Point"…………………………………………25

     G.     "Rotation Point"…………………………………………………...26

     H.     "Rotating the Window About the Rotation Point at the

          Discretion of the User"………………………………………………27

     I.     Means-Plus-Function Terms…………………………………………29

          1.     "means for determining a rotation point"………………………..29

          2.     "means for rotating the window about the rotation point at the

               discretion of the user"/"means for rotating the window by

               predetermined increments"/"means for returning the window

               to a zero degree orientation"……………………………………30

V.  CONCLUSION………………………………..…………………………..……...31

## I.  BACKGROUND

Plaintiff, Rotatable Technologies LLC, (hereinafter "RT") filed suit against Defendants on May 1, 2012, asserting United States Patent No. 6,326,978, titled "Display Method For Selectively Rotating Window On A Computer Display" (hereinafter, "the '978 patent" or "the patent-in-suit"). On July 15, 2013, the Court held a *Markman* hearing in the case (Dkt. 96.) This Memorandum and Order provides the Court's construction of the disputed claim terms at issue and the Court's determination of other disputed issues  presented by the parties related to construction of the asserted claims of the '978 patent.

## II.  LEGAL PRINCIPLES

It is understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).  Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, courts look to three primary sources: the claims themselves, the specification, and the prosecution history. *Markman*, 52 F.3d at 979.  The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.*  A patent's claims must be read in view of the specification, of which they are a part. *Id.*  For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and

3

may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent

application." *Id.* at 1313.   This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*   Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978).   Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id.* at 1314-17.   As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878).   In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316.   Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

Where a claim limitation is expressed in means-plus-function language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112 ¶ 6. *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, 35 U.S.C. § 112 ¶ 6 "mandates that such a claim limitation 'be construed to cover the corresponding structure . . . described in the specification and equivalents thereof.'" *Id.* (quoting 35 U.S.C. § 112 ¶ 6). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id.*

Construing a means-plus-function limitation involves multiple inquiries. "The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "[t]he next step is to determine the corresponding structure described in the specification and equivalents thereof." *Id.* A "structure disclosed in the specification is 'corresponding' structure only if the specification or

7

prosecution history clearly links or associates that structure to the function recited in the claim." *Braun*, 124 F.3d at 1424.

"While corresponding structure need not include all things necessary to enable the claimed invention to work, it must include all structure that actually performs the recited function." *Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005). "The question is not whether one of skill in the art would be capable of implementing a structure to perform the function, but whether that person would understand the written description itself to disclose such a structure." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008). Further, the identified structure needs to be more than a "black box." *See Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1382-82 (Fed. Cir. 2009). The structure needs to be described in detail and not abstraction. *See id.*

When a contention is made that a claim is invalid for indefiniteness under 35 U.S.C. § 112 ¶ 2, inquiry must be made as to whether the claim fails to particularly point out and distinctly claim the subject matter that the applicant regards as the invention. The party seeking to invalidate a claim under 35 U.S.C. § 112 ¶ 2 as indefinite must show by clear and convincing evidence that one skilled in the art would not understand the scope of the claim when read in light of the specification. *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003).

Where computer-implemented inventions are at issue and claimed using means-plus-function limitations, the Federal Circuit "has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328,

1333 (Fed. Cir. 2008). Rather, the patent must disclose sufficient algorithmic structure (or some other description) explaining how the computer performs the claimed function. *See id.* at 1332-37; *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1383-84 (Fed. Cir. 2009); *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008). The term "algorithm" in computer systems has broad meaning and encompasses "in essence a series of instructions for the computer to follow," *In re Waldbaum*, 457 F.2d 997, 998 (CCPA 1972), whether in mathematical formula, or a word description of the procedure to be implemented by a suitably programmed computer. *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir. 2011) ("i.e.,…a step-by-step procedure for accomplishing a given result.").

The patentee may express that algorithm in any understandable way: a mathematical formula, in prose, as a flow chart, or in any other manner that provides sufficient structure. *Id.* But, "simply reciting 'software' without providing some detail about the means to accomplish the function is not enough." *Id.* at 1340-41. Further, even though the algorithm may be expressed in any understandable way, "an algorithm is still a step-by-step procedure for accomplishing a given result." *Ergo Licensing*, 673 F.3d at 1365 (internal citations and quotations omitted).

In limited circumstances, a general purpose computer may suffice as structure for a ***generic*** function (such as "processing") if the function is "coextensive with the structure disclosed." *Katz Interactive Call Processing Patent Litig. v. Am. Airlines, Inc. (In re Katz Interactive Call Processing Patent Litig.)*, 639 F.3d 1303, 1316 (Fed. Cir. 2011). However, a construction narrowing the functions to "***specific*** computer-implemented functions" requires corresponding algorithms to be disclosed. *Id.* at 1317.

If the patentee fails to disclose in the patent any algorithmic structure corresponding to the claimed function, the claim is invalid for indefiniteness under 35 U.S.C. § 112 ¶ 2.

The preamble of a claim is not limiting if a structurally complete definition of the invention is provided in the body of the claim and the preamble only states a purpose or intended use of the invention. However, a preamble term can be a limitation if a term in the preamble provides antecedent basis for a limitation appearing in the body of the claim or if a preamble term was used as a claim limitation to overcome prior art during prosecution. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808-810 (Fed. Cir. 2002).

### III.  U.S. PATENT NO. 6,326,978

A.     The Disclosure of the '978 Patent

The '978 patent describes that the operating system of a computer through application programs running on the computer generate graphical user interfaces ("GUIs") that are displayed on a monitor or screen of a computer system.[1] Furthermore, the '978 patent identifies a GUI as being a "window." Such a window, according to the '978 patent, includes a frame and a display portion surrounded by the frame.[2]

The '978 patent seeks to facilitate human interfacing with a computer by providing a method for selectively rotating windows on a computer display.[3] Thus, the '978 patent is directed to a computer display method that allows a user to rotate

---

[1] '978 patent at col. 1:21-30.

[2] '978 patent at col. 1:31-35.

[3] '978 patent at col. 2:18-29; col. 4:56-58.

windows on a computer display at will such that information can be presented in any orientation desired by the user. In accordance with the '978 patent, windows on a display can be rotated about a preselected rotation point to any desired degree. Such operation is depicted in Figs. 1 and 2.

In Fig. 1, a window 10 is shown in a "home" position. Using rotation button 28, the window 10 can be made to rotate away from the home position as shown in Fig. 2 by rotation about point 30.[4]



Specifically, the '978 patent describes that window 10 has a display portion 14 and a frame formed by header portion 12, vertical scroll bar 16, horizontal scroll bar 18, and line 10.[5] Rotation of window 10 about rotation point 30 is controlled by the user via

---

[4] The '978 patent illustrates a commonly used "window" configuration by showing an Apple® Macintosh® window and a Microsoft® Windows® window. See, col. 3:1 and col. 4:1.

[5] '978 patent at col. 3:13-22.

rotation button 28. The user clicks and holds rotation button 28 with an input device until window 10 arrives at the desired orientation.[6]

The '978 patent describes two modes of selective rotation that allows a user to rotate window 10 within a 360 degree circle. In the first mode described, a user is able to choose any orientation (i.e., 0-360 degrees). For example, Fig. 2 shows rotation of 310 degrees. In the second mode, the user is limited to rotating window 10 to orientations of 0, 90, 180, and 270 degrees.[7]

As shown in Fig. 2, window 10 can be rotated about any of nine different rotation points 32, 34, 36, 38, 40, 42, 44, and 46. According to the '978 patent, any one of the nine points is user-selectable.[8]

B.      The Asserted Claims of the '978 Patent

RT asserts independent method claim 9. The claim reads as follows with the claim terms in dispute shown in bold:

> 9. A method of **selectively rotating a computer display window** having a **display portion** and a **frame surrounding the display portion**, the method comprising the steps of:
> > **determining a rotation point**; and
> > **rotating the window about the rotation point at the discretion of the user**;
> > wherein the plane of the **window**, the plane of rotation, and the rotation point are coplanar.

In addition, RT asserts dependent claims 11 and 13 as follows:

> 11. The method according to claim 9, wherein the step of rotating comprises the step of rotating the **window** by predetermined increments.

---

[6] '978 patent at col. 3:39-44.

[7] '978 patent at col. 3:46-50.

[8] '978 patent at col. 4:22-31.

13. The method according to claim 9, wherein the step of rotating comprises the step of returning the **window** to a zero degree orientation.

RT also asserts independent apparatus claim 14, which reads as follows with the disputed claim terms highlighted:

14. A system for **selectively rotating a computer display window** having a **display portion** and a **frame surrounding the display portion**, the system comprising:

> **means for determining a rotation point**; and
> **means for rotating the window about the rotation point at the discretion of the user**;
> wherein the plane of the **window**, the plane of rotation, and the rotation point are coplanar.

In addition, RT asserts dependent claims 16 and 18 as follows:

16. The system according to claim 14, wherein means for rotating comprises **means for rotating the window by predetermined increments**.

18. The system according to claim 14, wherein means for rotating comprises **means for returning the window to a zero degree orientation**.

## IV.  CONSTRUCTION OF DISPUTED TERMS

A.    <u>Whether the Preamble Terms in Claims 9 and 14 Are Limitations</u>

According to RT, none of the preamble terms are limiting because the body of the claim defines a complete invention and the preambles merely state a purpose or intended use. Thus, RT contends, no construction of any term in the preamble is necessary. (Dkt. 80 at 5.)

Defendants respond that the terms "selectively rotating" and "computer display window" are limitations and require construction. (Dkt. 84 at 8-10; Dkt. 85 at 2.) According to Defendants, the preamble term "computer display window" in the preamble provide antecedent basis for "the window" in the body of the claim, which requires the

preamble term to be limiting. Defendants further argue that clear reliance was placed on the preamble term "selectively rotating" during prosecution to define the claimed invention in distinguishing the prior art. (Id.)

RT disputes that "selectively rotating" was relied upon in the prosecution to distinguish the invention over the prior art. Instead, reference to "selectively rotating" was an ancillary comment regarding the prior art made while refuting the legitimacy of the PTO's combination of two prior art references cited in a rejection of the pending claims. (Dkt. 87 at 4-5.) RT argues that "computer display window" in the preamble is not limiting because the body of the claim is structurally complete in reciting "window" and no reference to the preamble is necessary to understand the scope of the claim. (Dkt. 87 at 5-6.)

Both parties rely upon *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808-810 (Fed. Cir. 2002). (Dkt. 80 at 9; Dkt. 84 at 9.) In *Catalina*, the Court recognized that dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention. *See id.* The Court further noted that clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention. *See id.*

    1.    *"computer display window"*

As originally filed, claims 9 and 14 of application serial no. 09/295,164 contained the preamble language in question.[9] In a final office action mailed June 12, 2001, the

---

[9] The '978 patent file history is appended to Apple Inc.'s responsive *Markman* brief.

PTO rejected the claims as being obvious over a combination of Horvitz (US 6,016,145) and Jensen (US 5,956,043). In his Response After Final Office Action, on page 2, the applicant argued that Jensen used the term "window" to define a region of space, but "[t]his is not the same as a 'computer display window' as used by one of ordinary skill in the art and as used in the present claims."

The PTO followed with an advisory action on July 20, 2001, stating that "[a]s per claim 1, the 'computer display window' is not part of the claim limitation." In responding to the advisory action on August 20, 2001, with a response titled "Appeal Brief," the applicant stated:

> In response, the Advisory Action dated July 20, 2001, states that "…the 'computer display window' is not part of the claim limitation." However, independent claims 1, 9, and 14 contain "a computer display window" in the first line of each claim. This provides the antecedent basis for "the window" on line 4 of claim 1, on line 5 of claim 9, and on line 4 of claim 14 whereby the limitation is incorporated into the body of the claim."

(Dkt. 84 at 8.)

Accordingly, by the patentee's own admission, the preamble term "computer display window" provides necessary antecedent basis for "window" in the body of each of claims 9 and 14. Further, the applicant relied upon the preamble term as a limitation to distinguish the Jensen prior art.

The Court finds that the preamble term "computer display window" is a limitation of the asserted claims. Further, because the preamble language of "computer display window" includes further defining structure of the limitation (i.e., "having a display portion and a frame surrounding the display portion"), the Court finds that the entire preamble phrase relating to "computer display window" is a limitation of the asserted claims.

15

2.       *"selectively rotating"*

Original independent claims 1, 9, and 14 were rejected in an office action mailed March 8, 2001, as being obvious from Horvitz. In the office action, at page 4, the PTO characterized Horvitz as disclosing a method and a system of selectively rotating a computer display window by inherently determining a rotation point and rotating the window at the discretion of the user.

The PTO examiner's characterization of Horvitz can be seen from Figure 3 of Horvitz (Dkt. 84-4 at 16), which illustrates rotatable windows on a computer screen:



The windows 52 and 58 are rotatable about the vertical Y axis as desired by the user, but such rotation is limited to preselected orientations of 0 degrees (shown) and 90 degrees wherein the window is in a planar view and not in a perspective view (i.e., 3-D) as shown.

16

In response, on May 19, 2001, the applicant amended claims 9 and 14 to recite the additional limitation of "wherein the plane of the window, the plane of rotation, and the rotation point are coplanar." In remarks, the applicant characterized Horvitz as providing a virtual three-dimensional workspace wherein rotation of each of the windows 52 and 58 is about a line, and the window edges remain parallel to two axes (i.e., Y-Z or Y-X). Further, the applicant said amendments to the claims made explicit, in contrast to Horvitz, that the geometry of window rotation is two-dimensional and coplanar.

In the final office action, the PTO asserted new grounds and rejected the claims as being obvious from a combination of Horvitz and Jensen. At page 3 of the final office action, the PTO examiner noted that Horvitz does not disclose the claimed two-dimensional, coplanar geometry. But, the PTO examiner advanced Jensen as disclosing window rotation with such geometry and the contention that it would have been obvious to one of skill in the art to incorporate the teaching of coplanar rotation in Jensen into Horvitz.

An illustration of the PTO examiner's characterization of Jensen in seen in Figs. 13 and 14 of Jensen (Dkt. 85-9):

17



Fig. 12

Fig. 13

Fig. 14

As can be seen, Jensen shows two-dimensional, coplanar rotation about a point of rotation to any desired angle of θ + Δ (i.e., 0-360 degrees) in satisfaction of the "coplanar rotation" limitation in claims 9 and 14.

In the "Response After Final Office Action," applicant traversed the rejection in several ways. (Dkt. 85-10 at 4-6.)

First, applicant characterized Jensen as not disclosing rotation of a "computer display window." That is, applicant said Jensen's tiled image was not a "window." However, such characterization was of no consequence because Horvitz disclosed rotation of a "computer display window."

Second, applicant disputed that Horvitz's disclosure of limited window rotation made obvious use of any form of rotation including Jensen's coplanar, two-dimensional rotation.

Third, applicant said there was no motivation for one of skill to combine Horvitz and Jensen as contended by the examiner.

18

Fourth, and finally, applicant said that because selectively rotating a window to any desired angle, as in Jensen, is not limited only to angles of rotation of 0, 90, 180, 270, and 360 degrees, the window edges will not be maintained parallel to the x, y, and z axes, which according to applicant is a principle of operation of Horvitz. The applicant stated:

> As noted in the Amendment dated May 19, 2001, "[i]n all instances [as taught by *Horvitz]*, the edges of the window always remain parallel to two of the three X-, y-, and z-axes." ***By contrast***, a window that has been ***selectively rotated*** to an angle, other than 0, 90, 180, 270, and 360 degrees, ***as claimed*** will have none of its edges parallel to the three x-, y-, and z-axes. Thus, the suggested modification would result in a change to the principle of operation of *Horvitz*. As a result, the teachings of the references are not sufficient to render the claims *prima facie* obvious. (emphasis added)

(Dkt. 85-10 at 6.)

In this statement, the applicant distinguished Horvitz on the basis of the "as claimed" rotation (i.e., "selectively rotating" in the preamble), which is not limited to angles of rotation of 0, 90, 180, 270, and 360 degrees but extends to any angle of rotation within the full range of 0-360 degrees. Applicant did so as a predicate to his argument that despite Jensen showing "selectively rotating" in a coplanar, two-dimensional geometry, as recited in the claims, so modifying Horvitz would defeat Horvitz's three-dimensional workspace capability purpose.

The Court finds that the applicant relied upon the preamble term "selectively rotating" to distinguish Horvitz and provide the underpinning for his argument that combining Horvitz and Jensen in an obviousness rejection was improper. Doing so transformed the preamble term into a claim limitation because, as stated by applicant, it defines, in part, the claimed invention.

19

Accordingly, the Court finds that the preamble term "selectively rotating" is a limitation of the asserted claims.

B.    "Selectively Rotating a Computer Display Window"

Having determined that the preamble term "selectively rotating" is a claim limitation, the Court must determine what construction, if any, is necessary.

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary. | Rotating a computer display window such that any angle of orientation may be chosen, including an angle other than 0, 90, 180, 270, and 360 degrees. |

RT argues that the term needs no construction because it is not a limitation. RT further argues that Defendants' construction ignores preferred embodiments in the specification that do limit rotation to 90 degree increments. (Dkt. 87 at 6-8.)

Defendants argue that the scope of the specification permits a user to select the amount of window rotation in any amount. (Dkt. 84 at 10.) Further, Defendants contend, the problem being addressed by the '978 patent is to provide a user with an ability to rotate a window "as needed or desired." (Id.) Defendants argue that the prosecution history demonstrates a definitional meaning given to the term in order to obtain allowance and specifically to distinguish the Horvitz prior art. (Dkt. 84 at 7-9.)

RT is correct that the specification describes two modes of window rotation. In one mode, the user is able to choose any degree of rotation within a 360 degree circle. In the other mode, a user's choice of rotation is limited to preselected degrees of rotation such as 0, 90, 180, and 270 degrees. Applied in its broadest sense, "selectively rotating" could include either mode. However, applicant's statement in his response to the final

office action rejection concerning the alleged improper combination of Horvitz and Jensen, as set forth above, demonstrates that applicant ascribed a particular meaning to "selectively rotating" and put one of skill in the art on notice as to that particular meaning. In contrast to Horvitz's limited rotation to 0, 90, 180, 270, and 360 degrees, the "selectively rotating" as claimed is, like in Jensen, rotation to any angle of rotation desired. That is to any angle from 0 degrees to 360 degrees including, for example, rotation to 310 degrees as illustrated in Fig. 2. The recitation in Defendants' construction of "any orientation" captures the limitation of any degree of rotation within a 360 degree circle. Thus, the portion "including an angle other than 0, 90, 180, 270, and 360 degrees" is superfluous and unnecessary.

Accordingly, the Court construes "selectively rotating a computer display window" to mean "rotating a computer display window such that any angle of orientation may be chosen."

C.   "Computer Display Window/Window"

Having determined that the preamble term "computer display window" is a claim limitation, the Court must determine what construction, if any, is necessary for the term "window" that appears in the body of each asserted claim.

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary, in the alternative only: a graphical user interface window. | A GUI that is displayed on the display monitor or screen where the GUI may be sized to display all or only a portion of total information made available for viewing by a program. |

RT relies upon its contention the preamble term "computer display window" is not limiting. As to the term "window" used in the body of each claim, RT says it is easily understood as a GUI and no construction is necessary. However, if construction is necessary, RT alternatively proposes "graphical user interface window." RT also disputes Defendants' construction as being overly limited to one disclosed embodiment. (Dkt. 80 at 12-13.)

Defendants contend that the applicant during prosecution used the term in a manner that defined it to be a displayed GUI that can be resized. (Dkt. 85 at 9.) Further, the patent specification defines a "window" according to its inherent characteristics, which includes resizing (Dkt. 85 at 10.) Finally, Defendants point to both Apple's OS window and Microsoft's OS window, which are resizable, as examples of a "window" in the specification.

As the parties agree, the specification defines "computer display window" and "window" as being a GUI. While a fundamental characteristic of a typical GUI at the time of filing for the '978 patent may have been a characteristic of being resizable, nowhere does the patented invention implicate such a requirement as Defendants suggest. Conversely, RT's alternative construction merely states the agreement of the party that a "window" is a GUI and then restates "window."

Accordingly, the Court construes "computer display window" and "window" to mean "a GUI displayable on a monitor or a screen."

D.      "Display Portion"

As indicated above, because the preamble term "computer display window" is a limitation, so is the term "display portion." The Court must determine whether construction is necessary and if so what that construction should be.

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction necessary. | The visible/viewable portion of the total information that a program makes available for viewing. |

RT contends that the term is one of common usage and needs no construction. Further, RT says, Defendants impose unfounded limitations. (Dkt. 80 at 13-14.)

Defendants point to what they contend to be a specific definition in the specification in support of their construction. (Dkt. 85 at 14.) Specifically, Defendants identify:

> "a window may be sized to display all or only *a portion of the total information made available for viewing by the program*. If the window displays only a portion of the total information, then the user is provided with one or more scroll bars that allow the user to move the *display portion* to view other portions of the total information" 1:44-49 (emphasis added).

Defendants further argue that inclusion of "visible/viewable" in the construction clarifies that the term does not refer to program portions that are obscured from the user. (Id.)

The import of such definition in the specification is that a "display portion" is where information is viewed. In terms of the patent's objective of facilitating human interfacing with a computer, in the context of rotating windows on a computer display, only the portion where information is viewed is of consequence. That a program is what makes information available for viewing is ancillary to that objective.

23

Accordingly, the Court construes "display portion" to mean "portion of the window for viewing information."

E.      "A Frame Surrounding the Display Portion"

As indicated above, because the preamble term "computer display window" is a limitation, the term "a frame surrounding the display portion" is also a limitation. The Court must determine whether construction is necessary and if so what that construction should be.

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary. | A border displayed on the graphical user interface surrounding the display portion. |

RT argues that the term is a common one that is well understood and, thus, no construction is necessary. RT criticizes Defendants' construction as including extraneous limitations. (Dkt. 80 at 14-15.)

Defendants advance the position that the term designates a border on every side of the display portion and relies upon the plain and ordinary meaning of the term. According to Defendants, consistent with the plain and ordinary meaning, the specification uses the term "frame" to mean that there is a surrounding that encircles and encloses the display portion. (Dkt. 84 at 13.) Further, Defendants argue the frame must be visibly displayed because it is specified to be part of the computer display window. (Dkt. 84 at 14.)

The parties appear to agree that the term is well understood and has a plain and ordinary meaning. However, only Defendants propose what that meaning should be. Their belief that the term "frame" carries a plain and ordinary meaning of being a "border" is consistent with what is described and exemplified in the specification. Their

construction, however, includes a superfluous limitation of "displayed on the graphical user interface." Moreover, including "surrounding the display portion" in the construction, which is language found in the claim itself, is unnecessary. The term "surrounding" requires no construction. The term "display portion" is otherwise construed and that construction is adopted.

Accordingly, the Court construes "a frame" to mean "a border."

F.      "Determining a Rotation Point"

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction necessary. | Rotation point is determined by the user. |

RT contends that Defendants improperly narrow claim scope to only one embodiment with their construction. Specifically, RT points to a description in the specification of an alleged embodiment providing a preselection routine for determining rotation points. (Dkt. 80 at 15-16.)

Defendants argue the specification teaches only that the user determines the rotation point. (Dkt. 84 at 15.) They say what RT points to is the preselection routine presented to the user before rotation begins where default rotation points are shown to the user and the user determines which rotation point is to be applied. (Dkt. 84 at 16.)

The Court finds that Defendants' proposed construction fails to address the term itself. Defendants' proposed construction simply restates the words of the claim in a rearranged order and then appends an extraneous limitation that is without support in the claims. The Court rejects Defendants' attempt to so limit the claims.

Accordingly, the Court concludes that no construction is necessary.

25

G.    "Rotation Point"

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary, in the alternative only: a point about which a window is rotated. | Center of rotation. |

RT contends that its alternative construction follows the plain and ordinary meaning of the term. (Dkt. 80 at 16-17.)

According to Defendants, the plain and ordinary meaning of the term "rotation" is to "turn around a center point" or "turn in a circle" as illustrated in the specification where rotation point 30 is shown in Figure 2. (Dkt. 85 at 7.) Defendants further argue that RT's alternative construction leaves the rotation point "untethered" from the rotating window. (Id.)

Both parties' constructions give the essence of the plain and ordinary meaning of the term. One of skill would readily understand such meaning and scope. Further, Defendants' construction and their arguments in support of it do not, as RT contends, seek to limit the term to only one embodiment where rotation point 30 in Fig. 2 is in the center of the window. Nevertheless, Defendants' contention is vague as to RT's proposed construction permitting a rotating window to be untethered from its rotation point. Clear to one of skill is that, because the window is rotating about its rotation point, the rotation point is necessarily on or within the window, although not necessarily at the center of the window.

Accordingly, the Court finds that no construction is necessary.

H.  "Rotating the Window About the Rotation Point at the Discretion of the User"

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary, in the alternative only: rotating the window about the rotation point upon receipt of a user input. | Apple: moving each part of the window in a circular path about the rotation point such that the user chooses the window orientation. |
| | Samsung & Motorola: turning the window about a rotation point in a circular path, where the user may select any amount of rotation. |
| | Alternatively: this term is indefinite under 35 U.S.C. § 112, second paragraph. |

The parties first dispute whether "rotating the window about the rotation point" requires the window to follow a circular path as it rotates about the rotation point.

RT contends that a limitation requiring "in a circular path" is unwarranted because the specification does not restrict window rotation to a specific path. (Dkt. 80 at 19.)

Defendants respond that the specification that rotation of the window is based on a 360 degree circle and thus mandates a circular path about the rotation point. (Dkt. 84 at 17; Dkt. 85 at 15-17.) Defendants specifically point to col. 3:7-12:

"[d]egrees of rotation will be based on a 360 degree circle measured in a counter-clockwise manner about a rotation point (not shown) with 0 degrees to the right, 90 degrees above, 180 degrees to the left, and 270 degrees below the rotation point."

(Dkt. 85 at 16.)

RT attempts to deflect the importance of this description by saying that the specification's reference to degrees of rotation is merely stating that a user can select a

27

new orientation but says nothing about the path taken to get there. (Dkt. 87 at 13.) In fact, argues RT, the specification never discusses any specific path for the rotation. (Id.)

However, to one of skill in the art, the specification is replete with descriptions and illustrations of rotating the window in a circular path. The illustration of window rotation presented in Figs. 1 and 2 shows movement of the window around rotation point 30 in a circular path. As Defendants contend, one of skill would read and understand "rotating the window about the rotation point" in a mathematical sense, which is rotation in a circular path. (Dkt. 84 at 17.)

The Court finds that Defendants are correct that "rotating the window about the rotation point" means "in a circular path."

The parties also dispute the meaning of "at the discretion of the user." RT contends that this portion of the claim term means that rotation occurs upon receipt of a user input. RT cites the specification in support, but such cite only discloses the user manipulating the rotation button 28. (Dkt. 87 at 14.) As Defendants suggest, what RT proposes adds a conditional or temporal limitation that is not present in the claims as written, the specification, or the prosecution history. (Dkt. 84 at 17.)

The Defendants argue that "at the discretion of the user" means that the user chooses the window orientation or that the user may select any amount of rotation. In support, Defendants point to the specification describing a user's ability to choose any orientation using the rotation button. (Dkt. 84 at 17; Dkt. 85 at 18.)

The Court agrees with Defendants. The rotation of the window about the rotation point is a matter of user choice. Thus, the user determines to what extent the window is

rotated. This determination is necessarily a matter of user discretion since it is based on user choice.

Accordingly, the Court construes the term "rotating the window about the rotation point at the discretion of the user" to mean "at the user's determination, turning the window in a circular path about a rotation point."

I.      Means-Plus-Function

The parties agree that the following terms are written in a "means-plus-function" format and are to be construed according to §112, ¶ 6. (Dkt. 80 at 22-27; Dkt. 84 at 20-23; Dkt. 85 at 19-23.)

1.      *"means for determining a rotation point"*

The Parties' positions are:

| RT's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Function: determining a rotation point | Function: determining a rotation point |
| Structure: a computer program that selects (i) a default rotation point, or (ii) a user-selected rotation point for a window, and equivalents thereof. | Structure: not disclosed |

RT contends that the specification discloses that a program allows the user to select a rotation point and that such is sufficient disclosure of structure. (Dkt. 80 at 24.) Specifically, RT argues that the preselection routine described is a computer program that carries out a step of determining a rotation point. (Dkt. 87 at 16.)

Defendants respond that for a computer-related invention, the law does not permit the disclosure of software alone to structurally support a means-plus-function limitation.

Rather, an algorithm expressed in some fashion by a step-by-step procedure must be disclosed. (Dkt. 85 at 21-22.)

Defendants contend that nowhere does the specification clearly link or associate any structure to the function recited in the claim as is required of the means-plus-function claim format. (Dkt. 85 at 20.) Next, Defendants contend that the specification does not disclose an algorithm capable of performing the function recited in the claim. (Dkt. 85 at 20-21.)

The Court agrees with Defendants. Under applicable legal authority, when the specification simply restates the function to be performed, there is no sufficient structure under § 112, ¶ 6. *See, e.g., Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008).

Accordingly, the Court finds that claim 14 is invalid for indefiniteness because no corresponding structure is disclosed in support of the "means for determining a rotation point" limitation.

2.  *"means for rotating the window about the rotation point at the discretion of the user"/ "means for rotating the window by predetermined increments"/ "means for returning the window to a zero degree orientation"*

The Court having determined that Claim 14 is invalid for indefiniteness finds that the terms "means for rotating the window about the rotation point at the discretion of the user," "means for rotating the window by predetermined increments" and "means for returning the window to a zero degree orientation" as found in Claim 14 and in Claims 16 and 18, which depend upon Claim 14, need not be reached by the Court. The Court,

because Claim 14 is held invalid as indefinite, declines to construe such other terms as found within Claim 14 or those other claims that depend from it.

## V. CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patent-in-suit.  The parties are **ORDERED** that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are **ORDERED** to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the parties are hereby **ORDERED**, in good faith, to mediate this case with the mediator agreed upon by the parties.  As a part of such mediation, each party shall appear by counsel and by at least one corporate officer possessing sufficient authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of settlement that might arise during such mediation.  Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate.

**So Ordered and Signed on this**

**Aug 1, 2013**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE